**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

John D.,                                      )   No. CV 05-2254-PHX-JAT
                                              )
                Plaintiff,                    )   **ORDER**
                                              )
vs.                                           )
                                              )
Roger Vanderpool, Director of Arizona)
Department of Public Safety; City of)
Phoenix, a Municipality; John)
Lindenmeier, City of Phoenix Police)
Department,                                   )
                                              )
                Defendants.                   )
                                              )
_____)

        Pending before this Court is Defendants' Motion for Sanctions (Doc. 50), Motion for

Summary Judgment (Doc. 51), and Motion for Summary Disposition (Doc. 53).

**I.      ARIZONA'S MEGAN'S LAW**

        Megan Kanka was a seven year old child that was abducted, raped, and murdered by

a man who lived in the house across the street from her.  He had been convicted of sex

offenses against young girls twice before, but the Kanka family was unaware of his prior

history.  Since Megan's murder, every state has enacted some form of "Megan's Law," that

requires registration and notification for convicted sex offenders.

        Arizona law requires every convicted sex offender to register with the sheriff of the

county where the offender resides.  A.R.S. § 13-3821(A) (Supp.1997).  The information

provided by the offender is forwarded to the Department of Public Safety (DPS) and to the chief of police where the offender resides.  A.R.S. § 13-3821(D).  Law enforcement must then prepare a risk assessment and categorize the offender.  A.R.S § 13-3825(A)(2), (C).  The Arizona Sex Offender Assessment Screening Profile for Regulatory Community Notification (Risk Assessment), used by law enforcement to establish what level of notification a convicted sex offender will receive, is based on guidelines that were created by the State Community Notification Guideline Committee.  A.R.S. §13-3826.

Each risk assessment category has different notification requirements.  The statutes provide for notification that is "based on the risk that a particular sex offender poses to the community." A.R.S. §§ 13-3825 to -3826.  If a sex offender is rated a level 1 offender, law enforcement must give information about the offender only to other law enforcement agencies and the people the offender lives with.  A.R.S. §13-3826(E)(1)(b).  If the offender is assessed as level 2 or 3, notification must be made to the neighborhood where the sex offender lives, local schools and daycare centers, community groups and prospective employers.  Levels 2 and 3 also include a flyer with a photo and physical description of the offender, the offender's address, and the crime the offender was convicted of.  Additionally, a flyer and a press release are given to the media, and the same information is published to the DPS web site.  A.R.S. §§ 13-3826(E)(1)(a), -3827(B).

## II.    FACTUAL BACKGROUND

The chronology of events leading up to this lawsuit, presented in the light most favorable to Plaintiff, is as follows.  On February 28, 2005, Plaintiff John D. pled guilty to attempted sexual exploitation of a minor for viewing child pornography on the internet.  In the plea agreement, Plaintiff agreed to registration as a sex offender.  Detective Lindenmeier used the Risk Assessment to determine what level of notification the Plaintiff would receive.  Plaintiff received a score of 22, which is within the level 2 offender category.  On July 21, 2005, Plaintiff's criminal defense attorney left a message with Detective Lindenmeier's office in order to discuss Plaintiff's notification level.  Later that day, Detective Lindenmeier returned the message, explaining that he would not discuss the notification level.  Plaintiff

disputes the finding that he is a level 2 offender and filed the §1983 action to challenge the constitutionality of Arizona's sex offender notification statute.

To prepare for trial, Defendants wished to take the depositions of Plaintiff and Plaintiff's wife. The deposition notices were served on Plaintiff and his wife on January 5, 2006. Amended deposition notices were served on February 1, 2006. The depositions were scheduled for March 22, 2006, nine days before the discovery deadline. On March 20, 2006, Defendants' counsel received a letter stating that Plaintiff's counsel could not attend the deposition because of another matter. Defendants' counsel responded that she would move the depositions only if Plaintiff's counsel could persuade the Court to extend the discovery and dispositive motion deadlines. Plaintiff's counsel failed to contact either the Court or Defendants' counsel. On March 22, 2006, Plaintiff, Plaintiff's wife, and Plaintiff's counsel did not appear for depositions.

Defendants filed a Motion for Sanctions for Plaintiff's failure to appear for depositions on March 30, 2006, and a Motion for Summary Judgment on April 3, 2006. Plaintiff did not respond to either motion. On May 16, 2006, Defendants moved for summary disposition of both motions.

**III.    MOTION FOR SUMMARY DISPOSITION**

Defendants submitted a Motion for Summary Disposition under Local Rule 7.2(i), on May 16, 2006. The Rule states that motions can be summarily granted by the Court when the adverse party fails to respond. Here, Defendants seek to have the Court grant two motions: (1) a Motion for Sanctions for failure to appear for depositions, filed on March 30, 2006, and (2) a Motion for Summary Judgment, filed on April 3, 2006. The Court discusses each in turn.

**IV.    MOTION FOR SANCTIONS**

Plaintiff failed to respond to the motion for sanctions. Local Rule 7.2(i) allows the Court to grant Defendants' Motion for Sanctions outright. Despite the authorization of the local rule, however, the Court will address the motion on the merits to explain what sanctions it imposes, and the party it will impose them on.

Rule 37(d) authorizes the Court to sanction a party who fails to appear for a deposition after being served with proper notice.  The Rule states in pertinent part:

> If a party ... fails to appear before the officer who is to take the deposition, after being served with a proper notice, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.  In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d).  Each of the elements of the rule has been satisfied.  First, it is undisputed that Plaintiff, Plaintiff's wife, and Plaintiff's counsel received notice of the depositions.  Second, by enclosing copies of the notice, Defendants have adequately demonstrated to the Court that notice to the parties was proper.  Third, the affidavit of the Court reporter who was to take the depositions attests that Plaintiff, Plaintiff's wife, and Plaintiff's counsel failed to appear for the deposition.  Therefore, Rule 37 directs the Court to apply sanctions against the offending party unless the failure to appear was substantially justified.

To make an award of costs and fees, the Court must only determine whether those failures were "substantially justified," within the meaning of Rule 37.  Plaintiff's counsel made no attempt to contact Defense counsel personally to arrange an alternate date.  A letter sent only two days before a scheduled deposition, and less than two weeks before the discovery deadline, afforded opposing counsel no meaningful opportunity to respond, and is inadequate to substantially justify a failure to appear for depositions.  Therefore, the Court need only determine what sanctions are appropriate.

Plaintiff's failures to adhere to the discovery plan are due to a lack of diligence by its counsel.  Rule 37 sanctions must be applied both "to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent."  National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643 (1976).  If an attorney is responsible for the failure to provide discovery,

1    Rules 37(b) and 37(d) permit the Court to hold that attorney personally liable for the award

2    of fees and expenses.  In this instance it is appropriate for the attorney, and not the party, to

3    pay for the inconvenience he caused.

4          Defendants ask the Court to impose two sanctions. First, Defendants claimed the

5    modest sum of $360 for two hours its counsel spent preparing for the deposition.  Second,

6    Defendants request that Plaintiff and Plaintiff's wife be barred from testifying at trial.  To

7    determine an appropriate award, the Court first seeks to compensate the opposing party for

8    the time and expense of preparing the depositions.  The Court agrees that the imposition of

9    $360 against Plaintiff's attorney is reasonable.  However, because the Court grants judgment

10   in favor of Defendants and this lawsuit will not reach the trial phase, it is unnecessary to

11   reach the issue of precluding Plaintiff from testifying.

12   **V.      MOTION FOR SUMMARY JUDGMENT**

13         Defendants also request the Court to summarily grant their Motion for Summary

14   Judgment.  In <u>Martinez v. Stanford</u>, the Ninth Circuit Court of Appeals held that a motion

15   for summary judgment cannot be granted merely because the opposing party violated a local

16   rule because the moving party has an affirmative duty under Rule 56 to demonstrate its

17   entitlement to judgment as a matter of law.  323 F.3d 1178, 1182 (9th Cir. 2003); Fed. R.

18   Civ. P. 56.  In other words, despite the local rule that permits the Court to summarily grant

19   motions, the Court must analyze a Motion for Summary Judgment on the merits.  Therefore,

20   in order to heed the mandate of <u>Martinez</u>, the Court examines the Motion for Summary

21   Judgment as if the Plaintiff had responded.

22         Summary judgment is appropriate only when "the pleadings, depositions, answers to

23   interrogatories, and admissions on file, together with affidavits, if any, show that there is no

24   genuine issue as to any material fact and that the moving party is entitled to summary

25   judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, summary judgment is mandated,

26   "...against a party who fails to make a showing sufficient to establish the existence of an

27   element essential to that party's case, and on which that party will bear the burden of proof

28   at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

1    Initially, the movant bears the burden of demonstrating to the Court the basis for the

2    motion and the elements of the causes of action upon which the non-movant will be unable

3    to establish a genuine issue of material fact. Id. at 323. The burden then shifts to the non-

4    movant to establish the existence of material fact. Id. In addition, the nonmoving party may

5    not oppose a properly supported summary judgment motion by mere reliance on the

6    pleadings. See id. at 324. Because Plaintiff failed to respond to Defendants' motion, the

7    Court can only address the pleadings and the motion to determine whether basis exists to

8    deny the motion, however, it construes all disputed facts in the light most favorable to the

9    non-moving party. Ellison v. Robertson, 357 F.3d 1072, 1075 (9th Cir. 2004).

10   Defendants assert five grounds upon which the Court can conclude that Plaintiff is

11   unable to demonstrate the existence of a genuine issue of fact. Defendants' arguments

12   consist of the following issues: (1) substantive due process; (2) procedural due process; (3)

13   vagueness; (4) equal protection; and (5) equal protection "class of one." The Court addresses

14   each in turn.

15   **A.    SUBSTANTIVE DUE PROCESS**

16   Defendants argue they should be granted judgment because the community

17   notification statute does not implicate a liberty interest. Implicitly, Defendants are arguing

18   that the notification statute should be analyzed under the rational relations level of scrutiny,

19   and that Plaintiff could not prevail under that standard. The Fourteenth Amendment's

20   guarantee that "no person shall be deprived of life, liberty, or property without due process

21   of law," U.S. Const. Amend. XIV, has been construed to provide heightened protection

22   against government interference with certain fundamental rights and liberty interests. Reno

23   v. Flores, 507 U.S. 292, 301-302 (1993); Planned Parenthood of Southeastern Pennsylvania

24   v. Casey, 505 U.S. 833, 851 (1992). Conversely, if no fundamental right or liberty interest

25   is implicated, legislation is generally presumed valid and will be sustained if the

26   classification drawn by the statute is rationally related to a legitimate state interest." City of

27   Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985). If the Court applies

28   heightened scrutiny to the Arizona statute, it is more likely that a genuine issue will exist as

1   to whether it violated Plaintiff's rights.  Therefore, the Court presents arguments for Plaintiff
2   that most accurately reflect whether heightened scrutiny should apply.

3       Plaintiff could make three arguments supporting his view that a heightened level of
4   scrutiny should be applied to his substantive due process claim: (1) his privacy rights have
5   been violated by the notification statute; (2) the Arizona statute infringes upon his right to
6   control the upbringing of his child; and (3) the notification statute creates a statutory privacy
7   interest that prevents disclosure of the information by law enforcement.

8       First, Defendants argue that Plaintiff has no fundamental privacy interest in keeping
9   the information disclosed by the notification statute private.  In Doe v. Tandeske, the Ninth
10  Circuit Court of Appeals held that persons who have been convicted of serious sex offenses
11  do not have a fundamental right to be free from registration and notification.  361 F.3d 594,
12  597 (9th Cir. 2004).  Therefore, Plaintiff is not entitled to heightened scrutiny review of the
13  Arizona statute merely because he wishes to keep the information of his conviction of a
14  sexual offense private.

15      Second, Plaintiff alleged that if he continues to be labeled as a level 2 offender, his
16  wife will take his son away.  This allegation could be construed as an infringement upon
17  Plaintiff's ability to direct the education and upbringing of his child, a fundamental liberty
18  interest that is protected by the Fourteenth Amendment.  Meyer v. Nebraska, 262 U.S. 390,
19  400 (1923).  However, this argument fails because the deprivation would occur not because
20  of state action, but rather, because of the private actions of a party motivated by the indirect
21  costs that registration entails.  The due process clause of the Fourteenth Amendment offers
22  no shield against private conduct, "however discriminatory and wrongful."  Jackson v.
23  Metro. Edison Co., 419 U.S. 345, 349 (1974).  Therefore, Plaintiff will not be able to
24  establish that he is entitled to heightened scrutiny of Arizona's statute because of the actions
25  of his wife.

26      Third, Defendants argue the community notification statute does not create a statutory
27  privacy interest such that the Plaintiff could bring a substantive due process claim for police
28  use of the information.  A.R.S. § 13-2823 states, "*Except for use by law enforcement officers*

*and for dissemination as provided in § 41-1750*, a statement, photograph or fingerprint required by this article shall not be made available to any person." (emphasis added). Further, A.R.S. §§ 13-3825 to -3826 *require* law enforcement officers to disclose information about a sex offender to the community. Together, these statutes cannot be read to mean that sex offenders are protected from law enforcement's use of the information. Arizona's Megan's Law was enacted specifically to require law enforcement officials to use the information. To construe the statutes otherwise would defeat the legislature's intent to arm the community with sex offender information so that it can protect itself from recidivists. Plaintiff failed to establish that he is entitled to heightened scrutiny analysis, thus, he can challenge the Arizona notification statute only under the rational basis test.

Because the Arizona statute implicates neither a fundamental right nor a liberty interest, the government need only demonstrate that the statute serves a legitimate purpose. Here, the law's purpose is to protect public safety and "forestall future incidents of sexual abuse by notifying those who may well encounter a potential recidivist." Arizona Dept. of Public Safety v. Superior Court, 190 Ariz. 490, 495, 949 P.2d 983, 988 (App. 1997). The state has a reasonable and legitimate interest in protecting the health, safety, and welfare of its citizens, and community notification is rationally related to achieving that interest by alerting the public to the risk of sex offenders in their community. Therefore, even in the light most favorable to Plaintiff, the facts do not demonstrate that his substantive due process rights under the United States Constitution have been violated.

### B.    PROCEDURAL DUE PROCESS

Defendants also argue Plaintiff was not entitled to a separate hearing after his conviction to determine what level of notification he would be assigned. They claim his participation in the criminal justice system furnished all the procedural due process he is entitled to. Although Defendants correctly identify that community notification is *authorized*

1  only as a consequence of conviction for a sex crime, they misstate the significant of factual

2  hearings in the context of due process claims.

3          In Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 7-8 (2003), the Supreme

4  Court held that Connecticut's Megan's Law did not deprive a Defendant of procedural due

5  process when it required notification after conviction without a hearing.  The Court reasoned

6  that a hearing would be irrelevant because the law imposed notification requirements upon

7  the basis of the conviction *alone*.  Id. at 7 (emphasis added).  It held that in order to assert the

8  right to a hearing under the due process clause, a Plaintiff must show that *the facts they seek*

9  *to establish in that hearing are relevant under the statutory scheme*.  Id. at 8 (emphasis

10 added).  Here, the facts the Plaintiff seeks establish are relevant under Arizona's statutory

11 scheme.  Unlike Connecticut, Arizona does not base notification upon conviction alone, but

12 instead, "scores" each registrant and bases the level of notification upon the seriousness of

13 the underlying offense *and* the offender's probability of recidivism.  Thus, where Plaintiff

14 can point to facts that are relevant under the statutory scheme, he is entitled to a due process

15 hearing in able to contest those facts.

16         Nonetheless, Plaintiff failed to demonstrate that he has been denied a due process

17 hearing.  Arizona's notification law provides for a procedure so that a registrant can

18 challenge his notification level.   A.R.S. § 13-3826(E)(2) directed the Community

19 Notification Guidelines Committee to "Develop and recommend a process for a sex offender

20 to request a notification level review and for the court to determine if a sex offender

21 notification level may be reduced or the offender is no longer required to register." Although

22 the record contains testimony by the Plaintiff's attorney that she attempted to contact the

23 officer who assigned the Plaintiff his notification level, there is no evidence that Plaintiff

24 appealed his classification in any other manner, such as through the state court or an

25 administrative agency.

26         This Court cannot assume that Plaintiff's due process rights have been violated simply

27 because Plaintiff failed to pursue his grievance in the state system or respond to Defendants'

28 Motion for Summary Judgment.  In the complaint, Plaintiff alleges that the notification

1    committee never created the procedure that he could utilize to appeal his notification level.

2    However, the non-movant must come forward with specific facts showing that there is a

3    genuine issue for trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

4    586-87 (1986).  Facially, the statute provides the procedural due process that Plaintiff claims

5    he has been denied.  Without evidence of Arizona's denial of Plaintiff's rights, the Court

6    finds no Constitutional offense in Arizona's statute, and no triable issue of fact with which

7    Plaintiff could defeat the Motion for Summary Judgment.

8           **C.    VAGUENESS**

9           Defendants next argue that Arizona's notification statute is not unconstitutionally

10   vague, and thus, should be upheld.  An act is unconstitutionally vague when it fails to define

11   clearly what actions it prohibits, depriving the public of fair notice as to what is prohibited,

12   and encouraging arbitrary enforcement.  <u>Hill v. Colorado</u>, 530 U.S. 703, 705 (2000).  Thus,

13   to survive vagueness review, a statute must "(1) define the offense with sufficient

14   definiteness that ordinary people can understand what conduct is prohibited; and (2) establish

15   standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner."

16   <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)).

17          The Court reviewed the statute and finds it meets the standard articulated in <u>Kolender</u>.

18   The statute clearly defines the duties and responsibilities of the government and the

19   registrant; the statute gives clear notice of what actions will trigger registration and what

20   registration will entail.  Further, the statute clearly defines the procedures law enforcement

21   officials must use with every registrant to ensure enforcement of the notification statute is

22   uniform.  The risk assessment is based on statutorily-mandated guidelines promulgated by

23   the committee.  The Court agrees with Defendants that Arizona's community notification

24   statute survives a vagueness challenge, and presents no genuine issue of fact for trial.

25          **D.    EQUAL PROTECTION**

26          Defendants next argue that an equal protection challenge to Arizona's community

27   notification statute also fails because the statute's classifications survive rational basis

28   scrutiny.  Regulation is subject to rational basis scrutiny unless it discriminates against

1   members of a suspect class or implicates a fundamental right.  Green v. City of Tucson, 340

2   F.3d 891, 896 (9th Cir. 2003).  The Ninth Circuit Court of Appeals has resolved both issues

3   regarding sex offenders.  In United States v. Lemay, it held that sex offenders are not a

4   suspect class for purposes of equal protection analysis.  260 F.3d 1018, 1030-31 (9th Cir.

5   2001).  In Tandeske, it held that persons who have been convicted of serious sex offenses do

6   not have a fundamental right to be free from registration and notification statutes.  361 F.3d

7   at 597.  Together, these cases demonstrate that sex offender notification laws implicate

8   neither a suspect class nor a fundamental right.  Accordingly, Arizona's classification scheme

9   is subject only to the rational basis test.

10         For the purposes of equal protection, a statute is constitutional under the rational basis

11   test when "there is any reasonably conceivable state of facts that could provide a rational

12   basis for" it.  FCC v. Beach Communications, 508 U.S. 307, 313 (1993).  In other words,

13   where there are any plausible reasons for legislative action, the Court's inquiry is at an end.

14   Arizona's community notification statute makes two distinctions.  First, it requires

15   notification for sex offenders but not other dangerous felons.  Second, it places sex offenders

16   into different notification categories based upon their dangerousness to the community.  For

17   the Plaintiff to prevail, the classifications must be irrational.

18         "Sex offenders are a serious threat in this Nation ... States thus have a vital interest in

19   rehabilitating convicted sex offenders." McKune v. Lile, 536 U.S. 24, 32-33 (2002) (plurality

20   opinion).  In light of this threat and the likelihood of re-offense for this class of felons, the

21   Eleventh Circuit Court of Appeals held that even lifetime registration requirements are

22   rationally related to the State's interest in protecting the public.  Doe v. Moore, 410 F.3d

23   1337, 1347 (11th Cir. 2005).  Further, distinctions among felons generally are clearly

24   permissible.  The criminal code differentiates among all felons based upon the legislature's

25   determination of the severity of the crime, the effect of deterrence, and other policy

26   considerations.  The fact that community notification reporting requirements are civil is

27   immaterial.   Arizona's determination that certain convicted sex offenders are more

28   dangerous, and thus subject to greater notification requirements, is rationally related to

1   providing the public with notification commensurate to the danger posed by those sexual

2   offenders.   Therefore, Arizona's classifications and sub-classifications for sex offender

3   registration are rationally related to a legitimate governmental purpose and, accordingly,

4   present no triable issue of fact.

5            **E.     EQUAL PROTECTION "CLASS OF ONE"**

6            Defendants argue that Plaintiff cannot successfully bring a "class of one" equal

7   protection claim.  Generally, the Equal Protection Clause ensures that "all persons similarly

8   situated should be treated alike."  <u>Cleburne</u>, 473 U.S. at 439.  However, the equal protection

9   guarantee protects not only groups, but individuals who would constitute a "class of one."

10  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>SeaRiver Maritime Fin. Holdings,</u>

11  <u>Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir.2002).  Together, these rules establish that even

12  where an actor is uniquely situated, that actor's equal protection rights can still be violated.

13  Where, as here, state action does not implicate a fundamental right or a suspect classification,

14  Plaintiff can establish a "class of one" equal protection claim in two ways.  First, he could

15  demonstrate he "has been intentionally treated differently from others similarly situated and

16  that there is no rational basis for the difference in treatment."  <u>Willowbrook</u>, 528 U.S. at 564.

17  Second, Plaintiff could demonstrate that selective enforcement of valid laws is a pretext for

18  the improper motive of discriminating against him personally.  See <u>Freeman v. City of Santa</u>

19  <u>Ana</u>, 68 F.3d 1180, 1187-88 (9th Cir. 1995).

20           Here, Plaintiff fails to make either showing required to bring a "class of one" equal

21  protection claim.  The record is devoid of facts that demonstrate; (1) Defendants acted

22  intentionally against Plaintiff, (2) laws were selectively enforced against Plaintiff as a pretext

23  to discriminate against him specifically, (3) Plaintiff was treated differently from others, or

24  (4) others similarly situated were treated better than Plaintiff.  Plaintiff failed to produce any

25  evidence to persuade the Court that the proffered reason for the notification level he has

26  received is objectively false.  If anything, the record reflects the assigning officer's

27  unwillingness to speak to Defendants' counsel merely underscores his desire to avoid the

28

1  appearance of impropriety.  Without more, the Court cannot determine that the notification

2  level Plaintiff received lacks a rational basis.

3  **VI.     CONCLUSION**

4         This Court's examination of Arizona's Megan's Law leads it to the determination that

5  Plaintiff cannot demonstrate that a material issue of fact exists regarding whether the statute

6  violates his due process or equal protection rights, is unconstitutionally vague, or fails the

7  rational relations test of constitutionality.  Further, the unprofessional conduct of Plaintiff's

8  attorney in this matter requires the Court to impose sanctions on him.

9         Based upon the foregoing,

10        **IT IS ORDERED** that Defendants' Motion for Sanctions (Doc. 50) is **GRANTED**

11  **IN PART**, and Mr. Nicholas Hentoff is hereby sanctioned $360; Defendants' Motion for

12  Summary Disposition (Doc. 53) is **DENIED** as moot; and Defendants' Motion for Summary

13  Judgment (Doc. 51) is **GRANTED**, and the Clerk of the Court shall enter judgment

14  accordingly.

15        DATED this 19th day of July, 2006.

16

17

18  _____

                James A. Teilborg
19              United States District Judge

20

21

22

23

24

25

26

27

28